IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | No. 11-21003 |
| MARK STEPHEN NEIGHBORS and | ) | |
| SHELLY KAY NEIGHBORS, | ) | |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| In Re: | | |
| | ) | No. 11-21022 |
| NEIGHBORS INVESTMENTS, INC., | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Adv. 12-6097 |
| MARK STEPHEN NEIGHBORS and | ) | |
| SHELLY KEY NEIGHBORS, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LINDA BEADLE, | ) | |
| | ) | |

BE IT REMEMBERED, that on this 19th of September 2014, regularly on for hearing before the Honorable Dale L. Somers, Judge of the United States Bankruptcy Court for the District of Kansas, Robert Dole Courthouse, 500 State Avenue, Kansas City, Kansas.

A P P E A R A N C E S:

The Debtors Neighbors and Neighbors Investments appear in person and by and through their counsel of record, Ms. Erlene W. Krigel, Krigel & Krigel, 4550 Belleview, Kansas City, Missouri 64111.

A P P E A R A N C E S (Cont'd)

Linda Beadle appears by and through her counsel of record, Mr. Colin Gotham, Evans & Mullinex, 7225 Renner Road, Suite 200, Shawnee, Kansas 66217.

The Third-Party Bank of Versailles appears by and through its attorney of record, Ms. Kate Whittaker, Shook, Hardy & Bacon, 2555 Grand, Kansas City, Missouri 64108.

The United States appears by and through its attorney or record, Mr. Richard Wieland, Chapter 11 Trustee, 444 Southeast Quincy Street, Topeka, Kansas, 66683.

* * * * *

COURT CLERK: Case No. 11-21003, Chapter 11, Mark Stephen Neighbors, Shelly Kay Neighbors; Case No. 11-21022, Chapter 11, Neighbors Investments, Inc,; AP case, 12-6097, Mark Stephen Neighbors, Shelly Kay Neighbors versus Linda Louise Beadle.

MS. KRIGEL: Good afternoon, Your Honor, Erlene Krigel appears for the Neighbors personally and for Neighbors Investments in the main cases.

MR. GOTHAM: Afternoon, Your Honor, Colin Gotham for Linda Beadle.

MS. WHITTAKER: Kate Whittaker, Your Honor, for the third-party Bank of Versailles, Missouri in the court proceeding.

MR. NEIGHBORS: Mark Neighbors representing Shelly and myself.

THE COURT: Okay. We have, what, two main case bankruptcies and two adversaries plus a contested matter involving the discovery issue in the Bank of Versailles plus where is the real estate dispute? Nobody is here on that one.

MS. KRIGEL: Well, I am, Your Honor, but actually you have that set for a status conference on the 23rd.

COURT CLERK: And you said to leave it


Case 11-21022 Doc# 337 Filed 06/01/16 Page 3 of 32

on the 23rd so we didn't put it on today.

MS. KRIGEL: Just to quickly report, the other side, Nationstar, now has a representative with settlement authority, so we've been in contact with Judge Karlin and looks like October 29th will be our mediation.

THE COURT: Okay, so what I want to do today, this case was filed in 2011, is Mr. -- wait, Mr. Wieland?

COURT CLERK: Yeah, I think went out in the hall, Judge.

THE COURT: I think Mr. Wieland intended to be in here on this.

(OFF-THE-RECORD DISCUSSION.)

MR. WIELAND: Sorry, Your Honor.

THE COURT: No problem. Go ahead and enter your appearance.

MR. WIELAND: Dick Wieland for United States Trustee.

THE COURT: This case what has been on file since 2011. There has been what I see as virtually very little progress made towards plan confirmation. The plan, there is just continual disputes. I have a feel, but I think I've been told it's not so, but I can't shake the feeling

that any successful plan has to be dependent upon the outcome of the real estate dispute, the Bank of Versailles disputes, Beadle, the Beadle dispute.

And so I want to get an understanding of where this is going and Miss Krigel is playing no role in the adversaries, and as it currently stands the Neighbors have no attorneys in the adversaries or for that matter the discovery dispute contested matter.

Which although I think, Miss Krigel, you can't duck that one too easily.  That's a poor choice of words, I apologize for that.  But I mean you're the attorney of record.  It's a 2004.  It's in the main case and I think you're on board for that one unless and until they get some other counsel.

But this case is just swirling like it's in a whirlpool.  Mr. Gotham gets close to getting something going and then it gets removed.  I accept full responsibility for the delay in the discovery issue.

So tell me, Miss Krigel, how can we get this -- can you put together a plan that is not dependent upon some kind of success against the


Case 11-21022 Doc# 337 Filed 06/01/16 Page 5 of 32

Bank of Versailles, some kind of success against Miss Beadle, some kind of success with regard to Nationstar?

MS. KRIGEL: Well, Your Honor, I know it's been a long time but I just want to maybe refresh your memory.

In the Neighbors Investments case, the plan was confirmed. We do have a confirmable plan. The reason the case hasn't yet been closed is because of the pending adversary against Linda Beadle. And she did not file a claim in the case so she's filed a Counterclaim in the adversary but did not file a proof of claim timely in the main case.

So she was not treated as a creditor in the main case. We didn't list her as a creditor. We didn't believe that she was owed any money.

But as far as Neighbors Investments, once that adversary is concluded that case would be ready to close because we do have a confirmable plan and they are performing per the terms of that plan.

As to their personal case, we have the plan, amended plan, and disclosure statement on file and we've put off confirmation hearing

because a necessary part of that is the Nationstar matter.

And so, again, I have some renewed hope that we can get this resolved because now Nationstar has a representative willing to come to the table with some settlement authority.

So at this point Judge Karlin gave us several dates and it looks like everyone is agreeable to October 29th, so that looks like our date for mediation.

As to the Bank of Versailles and David Baumgartner they are not creditors, they are not owed any money and, in fact, during the course of the Chapter 11, part of it was there were motions for relief from stay and we reached settlements and they agreed to write off the debt, so we've successfully gotten creditors to write off over, over a million, million and a half dollars, so we've made great progress in these cases. It's just these matters are admittedly dragging and -- but we're hoping to get them resolved.

The Neighbors tell me that they have been talking with counsel and they are hopeful that they will have someone on board to help them with both the Beadle matter and the discovery

dispute although really the discovery dispute is, if I might, Your Honor, in your lap at this moment because I think it's be breached and we're just waiting for an answer on that.

THE COURT: My problem with the discovery dispute is very simple. I have all these. What I don't have from the bank is what I consider anything under oath, either -- and I may be wrong on this, in either, you know, testimony form or, you know, an Affidavit of some kind with regard to why they can't find these issues and what these problems are.

What I really -- my recollection is all I really have is kind of argument and whatnot. I mean -- if I can -- you know, the bank -- I'm not sure --

MS. WHITTAKER: Your Honor, if it might help if I could step in for a moment here. I have, you know, I'm new to this case.

THE COURT: Right.

MS. WHITTAKER: Just entered my appearance last month but I've had several conversations with the client over the last few days to get up to speed on this discovery issue, and based on these conversations I have some

clarification and some corrected information to what the issues that were addressed in the bank's response to the Motion to Compel that was -- we filed back in January, so I do have a little bit clarifying information and a correction to make with respect to the response that was previously filed.

To your comment about not having anything under oath, I know that we submitted the Affidavit of the bank's vice president, custodian of records, Brenda Smith, with our response. I'm not sure if that addressed or didn't address all of the things you were concerned with.

THE COURT: I don't think it gives me a basis to say the bank just can't do this. I mean that's the basis of this thing.

MS. WHITTAKER: I feel in a position to be able to explain to you perhaps better today where we are on each of the six issues that were addressed in the Motion to Compel, and I obviously don't have anything sworn with me today but if it would be helpful I could certainly follow up with that and submit it.

THE COURT: Would you put it writing?

MS. WHITTAKER: Certainly. Just from

me?

THE COURT: For me, what do you mean?

MS. WHITTAKER: From the attorney or some --

THE COURT: I think at some point, you know, with the problems adequately explained and an Affidavit to that effect, not just we can't find them --

MS. WHITTAKER: We can do that.

THE COURT: -- or we tried, that may be sufficient.

MS. WHITTAKER: Okay, and rather than hearing from us today on it, you'd like me to submit it in a supplement?

THE COURT: I would prefer it in writing.

MS. WHITTAKER: Okay.

THE COURT: I like oral argument, I think most people know that, but I think this both the Neighbors and I will be able to follow better if you write it.

MS. WHITTAKER: Understood, it can get confusing, happy to do so.

THE COURT: And do you have a -- when would it be reasonable to expect that?

MS. WHITTAKER: Next -- how about a week from today?

THE COURT: That would be great but don't put too short a timeframe on it.

I mean is that reasonable for you?

MS. WHITTAKER: That's reasonable for me.

THE COURT: Okay, then a week from today, it would be very helpful.

MS. WHITTAKER: Certainly.

MS. KRIGEL: Your Honor, I would hope that we would have an opportunity to respond to that if it appears there's some need for a response.

THE COURT: Probably will.

MS. KRIGEL: All right, thank you.

MS. NEIGHBORS: I would like to address the issue that it's been incorrectly filed as David Francis Baumgartner, and our business partner is actually David Gail Baumgartner.

Is that who you've been speaking with at Bank of Versailles? I don't know a David Francis Baumgartner.

MS. WHITTAKER: I don't think I filed anything that said David Francis, so I'm not sure

where that's coming from. That might be in a court record for some reason, but I didn't file anything with that name.

MS. NEIGHBORS: It's been inaccurately filed.

THE COURT: I suspect that David Francis and David whatever.

MS. NEIGHBORS: Gail.

THE COURT: Gail, are the same person.

MS. NEIGHBORS: They are not. David Francis Baumgartner that's filed with the court is actually in Atchison, Kansas.

David Gail Baumgartner, our business partner, is in Barnett, Missouri at the Lake of the Ozarks and I would like that corrected so that it's addressed properly.

THE COURT: Sure, she will address the right one.

MS. KRIGEL: I think, Your Honor, the name showed up on the notice of entry of appearance is where we found that so -- and it may be that someone just put the wrong name.

THE COURT: Okay, well, that will get straightened out.

One other issue.

MS. NEIGHBORS: It's actually written down as an Atchison address, too, and it does say Francis.

MS. WHITTAKER: Well, however it happened, it was apparently someone's mistake. We mean the David Baumgartner who is the president CEO of Bank of Versailles.

THE COURT: We appreciate you bringing that to our attention and it will get straightened out.

MS. NEIGHBORS: Thank you.

THE COURT: Mr. Gotham, I'm not sure -- let's hear what you have to say.

MR. GOTHAM: Judge, I think it would be my client's intention to file a Motion to Dismiss and I'll get that filed in the next 30 days.

I just, you know, don't want to come here every 30 days. I suggest you just set it out for another status 60 days from now and they either get an attorney or they don't. I think by then the Motion to Dismiss will be run at that point.

We've had discovery outstanding for a year and a half. I mean whenever I try to win on a procedural matter I never win it seems like, so

I've kind of stop trying, but, you know, this has to come a limit to this, of course.

I mean I don't want to come back here in a month with some attorney who just entered his appearance and we're kind of restarting at that point, so I'd say at least 60 or if not 90 days. I'm happy to see Your Honor, but I just don't see the point of coming out here every 30 days on this case.

THE COURT: So where are you on getting a lawyer.

MR. HOORFAR: Well, Your Honor, if I may, Cameron Hoorfar. I'm actually new on this matter. I've been talking with Mark and Shelly Neighbors for about a week now discussing this matter and I wanted to come here today just to see what would happen, but we are contemplating the possibility of myself and my office entering our appearance into this Beadle adversary matter, not for the main Chapter 11 or the other Nationstar adversary, but we have been talking about, if I can speak on your behalf, and we are thinking about that.

But the issue that I'm having currently is that we talked so close to this date I didn't


Case 11-21022 Doc# 337 Filed 06/01/16 Page 14 of 32

want to enter my appearance and really muck things up and things get pushed out. It going to take quite a bit of time to go over what's been done. I know that there have been at least two attorneys involved in this case that has been going on since 2012, I believe. There's a lot of allegations going on back and forth, so I wanted to get an overall view of what this case is going on before an actual enter of appearance was filed.

THE COURT: Could you spell your last name for us?

MR. HOORFAR: Sure. H-O-O-R-F, as in Frank, A-R, Hoorfar. When is a reasonable period of time for you to determine whether you're going to get in or not get in?

MR. HOORFAR: Well, Your Honor, I was really hinging my decision based on what had happened here today.

I know from speaking with the Neighbors much of their claim against Miss Beadle revolves around documents they can get from Bank of Versailles. So it's my understanding that if those documents cannot be obtained then their ability to answer discovery from Mr. Gotham and flush out their actual claims against Miss Beadle

will be severely hindered from speaking with just the Neighbors alone. I have not spoken to any other parties, but that's my understanding of the case thus far. So it's possible if we could get something from the bank one way or another --

THE COURT: What's the difference? I mean on the documents you're seeking from the Bank of Versailles with regard to -- is it Baumgartner, a different set of documents than you're seeking with regard to Miss Beadle?

MR. HOORFAR: Your Honor, my understanding -- sure, we can let the Neighbors talk.

MR. NEIGHBORS: Within the documents that we requested from the Bank of Versailles there are some transactions that would have some bearing on Linda Beadle when she was bookkeeper for us.

THE COURT: Have they been separated out, I mean, so that the bank has been specifically asked for those documents so it knows which ones they are?

MR. NEIGHBORS: Your Honor, we filed a Golden Rule letter and specifically identified questionable transactions.

THE COURT: I understand that but have you identified those with regard to Ms. Beadle separately?

MR. NEIGHBORS: No, I didn't know that there was a reason to separate them. The Bank of Versailles has been resistant to give us our records for five years.

THE COURT: Well, they are two different issues. I mean they may require two different sets of documents.

I mean I -- and frankly the Beadle's case is adversary and you cannot do discovery in an adversary through a 2004 examination. You have to do it -- you don't get this global giant fishing. You get a pretty broad fishing expedition, but you don't get the giant fishing expedition in a deposition as do you in a 2004. And in an adversary you got to do it by deposition and the rules of civil procedure production request.

MR. NEIGHBORS: There is other discovery that Mr. Townsend didn't file on our behalf and didn't follow through with --

THE COURT: Well, you know.

MR. NEIGHBORS: -- that impacts the

Beadle case.

THE COURT: What records do you need? Nobody is being held to anything, but what records do you need from the Bank of Versailles with regard to Ms. Beadle?

MR. NEIGHBORS: There would be some transactions that we would verify.

THE COURT: Well, but what, not just some transactions, what kind of transactions, what specific transactions?

MR. NEIGHBORS: Payments from Bank of Versailles to one of our companies to verify whether those transactions actually happened and were actually deposited into our accounts.

THE COURT: Refresh my memory on what the basic claim against Miss Beadle is.

MR. NEIGHBORS: Embezzlement and manipulating our computers.

THE COURT: And how does that tie into the claim against Mr. Baumgartner?

MR. NEIGHBORS: The relationship with the Bank of Versailles is a minor part of the Beadle case.

THE COURT: So there must be -- are there specific checks for specific transactions --

MR. NEIGHBORS: Yes.

THE COURT: -- of Miss Beadle that you know what transactions you're questioning?

MR. NEIGHBORS: We would be able to identify those.

THE COURT: And over what time period did this occur, the events with her?

MR. NEIGHBORS: She was employed with us from August 2006 through the end of 2009.

THE COURT: So you would be looking for records involving Miss Beadle during that period of time.

I don't remember what is and isn't -- I don't remember what the status of the records were doing that period of time or alleged as.

MR. NEIGHBORS: I believe that the Bank of Versailles had a server problem in some of that time period.

MS. WHITTAKER: I can refresh you if you'd like, Your Honor. The server crash was in October 2011 and affected records from November 2007 through October 2011.

MS. NEIGHBORS: I did speak with the Missouri state auditor's office who just did a report down in Morgan County and I've talked to

the county recorder's office down there as well as the county clerk and they were never notified of any server problem from Bank of Versailles, which is where they do their banking, as well as the prosecuting attorney. So I went ahead and spoke with the state auditor to see if they had any reference of any kind of server problem and they did not.

THE COURT: That's not before me today.

MS. NEIGHBORS: Okay.

THE COURT: I'm just trying to figure out --

MR. GOTHAM: Judge, if the Neighbors case is performing and all their claims are state law claims, they can pursue Miss Beadle in state court.

THE COURT: That may be the thing -- you know, Mr. Gotham, there are procedural matters that you can utilize to do that --

MR. GOTHAM: Right.

THE COURT: -- which have not been utilized. Actually you did raise that issue if I remember correctly in some fashion.

MR. GOTHAM: We did, Judge, in the original Motion to Dismiss.

MR. NEIGHBORS: Your Honor, we did make some progress with the Linda Beadle case. We hired experts Jerry Wiley (ph) and Randall Wolverton (ph). Mr. Wolverton is an FBI forensic accountant and he showed us methods to identify transactions and list the items that we believe are infractions that Miss Beadle created, so we have made a lot of progress.

Mr. Townsend was not quite as helpful as he could have been. There was some discovery that we know where Miss Beadle had her name on accounts at banks that weren't followed through with.

And so we would want the opportunity to go to those banks and get that information. And we would also like the opportunity to evaluate an account at a bank that Miss Beadle's husband has her name on -- his name on.

THE COURT: What does the Bank of Versailles have to do with -- what's stopping you from that?

MR. NEIGHBORS: The bank that I'm -- the bank that I'm referring to is Farmers Bank.

THE COURT: Right, but have you tried to get any of their records?

MR. NEIGHBORS: Mr. Townsend refused to

try and get those records for us. He thought that it was overreaching.

I think with the information that we have learned from Randall Wolverton and Mr. Hoorfar that we can carry this forth.

It is our intent to get this over. This has been a long, long journey for us and it's not our intent to drag anything out, including the Bank of Versailles and their non-production of records.

THE COURT: Well, now that I've heard over here, until the Bank of Versailles issue is resolved you're not going to know whether you're going to have a lawyer in the Beadle case.

Did I hear that right?

MR. HOORFAR: That's part of it, Your Honor. A large part of it obviously is Neighbors' resources. I believe, if I'm not mistaken, I just checked the docket in that case. I think there is a Motion for Disgorgement of fees that may be talked about today or maybe not. I know there was a response filed. I think that -- obviously this is a large banking transaction involved case that's going to take a lot of time and unfortunately they have already been through two

attorneys and whoever gets on their case is going to have to obviously redo or at least in small part review what's already been done.

I think, if I may, from talking with the Neighbors part or all of those funds that they are requesting back from their previous attorney would go towards moving this case forward. But in talking to them, if they are not allowed to it may be very difficult to move forward.

THE COURT: What, if not allowed to get money back from Mr. Stoke?

MR. NEIGHBORS: Townsend.

THE COURT: Not Stoke, Townsend.

MR. HOORFAR: That's my belief, Your Honor, from speaking solely with the Neighbors.

THE COURT: Well, okay.

MR. NEIGHBORS: Your Honor, is any discussion today available on Mr. Townsend and his representation?

THE COURT: No, that's going to be set on a separate track, separate situation.

Okay, so we have the Neighbors' personal bankruptcy case confirmation is dependent upon resolution of the dispute with Nations Bank.

MS. KRIGEL: Correct, Your Honor.

THE COURT: That is set to be mediated on October 29th.

MS. KRIGEL: Yes, Your Honor.

THE COURT: They are not here. We'll have a status conference on October -- September 23rd, like it's certainly set, but I have no date on down here in November before the 21st?

COURT CLERK: November 6th, Judge.

THE COURT: The case will be set for trial on November 6th. If you don't get it settled, we'll go to trial on November 6th, the Neighbors -- not Neighbors, Neighbors and the --

MS. KRIGEL: Nationstar.

THE COURT: -- Nations Bank, excuse me. Does it need eight hours.

MS. KRIGEL: I can't imagine that it would need --

THE COURT: If we start at 10 will we get it finished by 5?

MS. KRIGEL: I would say absolutely.

THE COURT: Okay, then the Nations Bank issue is set for trial at 10 o'clock on Thursday, November 6th.

I will want a pretrial order. If you

haven't done mediation I can't imagine you won't have exchanged every document that is to exchange, but I want a pretrial order by 2 o'clock on Tuesday, November 4th. I'll reiterate this at the status conference, and then we'll set a witness and exhibit list exchange. So that takes care of the main case.

You're going to have an attorney in this Townsend disgorgement matter or just going to be you two?

MR. NEIGHBORS: We would like to have Mr. Hoorfar.

THE COURT: Well, are you going to have one? Have you thought about it? Have you looked for one?

MR. NEIGHBORS: Absolutely, Your Honor. We have no intention of doing this pro se. Our funds are limited. We invested a lot of money with Mr. Townsend and time. If our funds were not limited there would be no question.

THE COURT: That's not going to be -- well, either I just set it for trial and everybody flies blind or it's not going to be a short process before it's ready to go.

Okay, I'll set that case to the docket,

we'll notice that to the docket on the 17th at 1:30 and I need a plan on how it's going -- how you're going to proceed.

MR. NEIGHBORS: Is that in reference to Mr. Townsend?

THE COURT: No, wait. I'm not doing it right. When did I move that to?

COURT CLERK: You moved it to the 22nd, October 22nd.

THE COURT: 1:30, October 22nd. The Motion to Disgorge on Townsend will be set for a docket status conference on October 22nd at 1:30.

MS. NEIGHBORS: May I ask what day of the week that is?

COURT CLERK: It's a Wednesday.

MS. NEIGHBORS: A Wednesday?

COURT CLERK: Actually we need to go later, Judge. You have something already set at 1:30. Do you want to go earlier? You don't have anything in the morning.

THE COURT: Yes, let's to go 11.

COURT CLERK: 11, okay, October 22nd, 11 o'clock. On the disgorgement? Okay.

MR. NEIGHBORS: Your Honor, I'm not sure how that works. Is that a lawsuit or is it just

discussions?

THE COURT: No, it's just what we're doing right now.

MR. NEIGHBORS: Okay. Okay, that's good.

THE COURT: The Beadle matter, I'm going to continue it to November 21st at 1:30 and I can't promise you where we'll be on that, Mr. Gotham.

MR. GOTHAM: That's fine, Judge, thank you.

THE COURT: 60 days or more. The discovery dispute, we're going to have the writings we need within a week, and I just simply have to review that and then act accordingly. I'll continue that to October 22nd also, because that way Mr. Hoorfar can look over the writings that might well help him formulate.

MR. HOORFAR: Is that 11 a.m. as well, Your Honor, same time?

THE COURT: Yes. What have I left out here?

MR. NEIGHBORS: Well, you could rule on our Motion to Compel and make them pay us a whole bunch of money today.

THE COURT: I could but I'd be reversed no matter what I did.

Mr. Wieland, appreciate you being here.

MR. WIELAND: Thank you, Your Honor. Sorry I was out in the hall. I apologize.

THE COURT: Do you have anything?

MR. WIELAND: Nothing to add, Your Honor, but I'll convey this to Joyce Owens, the attorney that handles the case, thank you.

THE COURT: And at some point if you can't get a lawyer that's, you know, we just got to go on, and probably I better have a pretty good idea by November 21st on that subject.

Because Mr. Gotham's comment is well placed, you know, these cases can just as well be brought in a state court in Missouri or maybe a federal court, district court, somewhere else.

I mean they are not, you know, it is clear that they are not significant to the success or failure of the bankruptcy. They are independent claims but they are here and we're fully capable of dealing with them.

MS. NEIGHBORS: Can we use the evidence from when she was arrested in Johnson County court and when she took the fifth on the 2004 exam? Do

we bring all that forward?

THE COURT: Excuse me?

MS. NEIGHBORS: She was already arrested in Johnson County court, in state court, Linda Beadle. Do we bring that --

THE COURT: You know, I can't -- you're either going to have a lawyer help you with that or not; okay?

MS. NEIGHBORS: Okay.

THE COURT: That's -- the goal is to have that figured out here by the 21st of November.

MS. NEIGHBORS: All right. I don't understand all the process.

THE COURT: I can't give you -- I can't tell you what to do but you got so many -- you know, in a sense you're going to have to -- you're going to have assign values to all these issues. You're going to have to prioritize them. You're going to have to decide which ones really matter, and which ones you might like to have them answered and you might like some acknowledgment that you were wronged, but they are just not worth the effort.

I mean what happens, now I'm wandering

way off field, but what happens to folks is they assign equal value to all slights, equal value to all loans, and they try and then get redress for every one of them and they get so bogged down in trying to correct every right and every slight and every wrong that they can't get to any of them.

And I don't know that that's this case here but I got a hunch there's some of that going on. You know, in your minds you had this person do you wrong and this person do you wrong and now this lawyer has done you wrong, you know, you just can't fight everybody. So figure out who, you know, who you need to fight.

MR. NEIGHBORS: We appreciate your comments, Your Honor.

THE COURT: Let the rest of them go. Okay. I think with that we're through. Thank you.

Trust me, I had clients that I had that same speech with on more than one occasion.

MR. NEIGHBORS: However.

THE COURT: What?

MR. NEIGHBORS: There could have been some help on the part of --

THE COURT: Well, I understand but there

again, see --

MR. NEIGHBORS: -- the Bank of Versailles.

THE COURT: -- you know, we might not be able to fix that one. I mean maybe we can, maybe we can't, maybe it's worth the time and effort, maybe it isn't.

My job is to take whatever you throw at me and deal with it, but the broader you get it the harder it is, you know. Again, it's the old proverbial herding cats. You just got to figure out what it is that you need to do to get to the finish line on the most important issues. And I think you may be getting there so thank you.

MR. NEIGHBORS: Thank you.

MS. NEIGHBORS: Thank you.

COURT CLERK: Court is adjourned. Thank you.

* * * * *

REPORTER'S CERTIFICATE

I, BRENDA FITZGERALD, Certified Shorthand Reporter of John M. Bowen & Associates, with offices located at 1930 Commerce Tower, 911 Main Street, Kansas City, Missouri, 64105, do hereby certify that I was personally present at the taking of the proceedings as set forth in the caption sheet hereof; that I then and there took down in shorthand the proceedings had at said time, and that the foregoing is a full, true and correct transcript of such shorthand notes so made at such time and place.

IN WITNESS WHEREOF, I hereunto set my hand and seal this 29th day of September, 2014.

/s/Brenda Fitzgerald, CSR